UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN CHING EN LEE,<br><br>Defendant. | Case No. 15-cr-00541-SI-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**<br><br>Re: Dkt. No. 136 |

Defendant John Ching En Lee moves for a judgment of acquittal or new trial on two charges of providing false statements to a government agency. Docket No. 136. Argument on the matter was heard on September 16, 2016. Having considered the arguments of the parties and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion.

**BACKGROUND**

Defendant was charged with two counts of making false statements to the government in violation of 18 U.S.C. § 1001(a), based upon statements he made in interviews with government agents on August 26, 2009, and October 10, 2013. Docket No. 14. The first count of the indictment charged defendant with "making false statements to representatives of the Department of Homeland Security about his involvement in providing funding to the owner of Crystal Massage Parlor, who was arrested for prostitution in relation to the Crystal Massage Parlor. The statements and representations were false because JOHN CHING EN LEE then and there knew that he had provided $30,000 to the owner to fund the Crystal Massage Parlor." *Id.* at 1-2. The second count charged defendant with "making false statements to representatives of the

Department of Homeland Security about his use of Treasury Enforcement Communications System (TECS) for personal reasons. The statements and representations were false because JOHN CHING EN LEE then and there knew that he had queried his own name, as well as the name of the owner of the Crystal Massage Parlor, using multiple spellings of the owner's name and using the owner's birthdate." *Id.* at 2.

On June 30, 2016, a jury found defendant guilty of both counts. Docket No. 123. Defendant now moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or for a new trial under Rule 33. Docket No. 136. In the alternative, defendant "requests an evidentiary hearing to determine whether the government committed discovery violations, violated the Jencks Act, . . . or otherwise committed constitutional error with respect to the October 10, 2013 interview of Mr. Lee." *Id.* at v.

## LEGAL STANDARD

### I.  Rule 29

Rule 29 of the Federal Rules of Criminal Procedure requires the Court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

The Court's review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010). This rule establishes a two-step inquiry:

> First, a . . . court must consider the evidence presented at trial in the light most favorable to the prosecution. . . . [And s]econd, after viewing the evidence in the light most favorable to the prosecution, the . . . court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."

*United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (quoting *Jackson*, 443 U.S. at 319) (final alteration in *Nevils*).

## II. Rule 33

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth Circuit described the standard for granting a new trial in *United States. v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992), which it reaffirmed in *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000):

> [A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses. . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Kellington*, 217 F.3d at 1097 (internal quotation marks and citations omitted).

## DISCUSSION

Defendant urges the Court to grant his motion based on the following: as to Count One, he argues that the evidence was insufficient to sustain a conviction as to the elements of falsity, intent, and materiality; as to Count Two, he argues that the evidence was insufficient to sustain a conviction as to the elements of intent and materiality. He also argues that the government's case was weak, that the government improperly and prejudicially focused its case on prostitution, that the government committed discovery and Jencks Act violations, that the government's closing argument was misleading, and that the Court erred by not giving the defendant's proposed jury instruction on falsity.

### I. Count One

Defendant argues, in part, that his conviction on Count One cannot stand because the government "did not offer sufficient evidence to prove beyond a reasonable doubt the exchange that was false, *i.e.*, the precise question asked and the answer that was false." Mot. at 12. The Court is troubled by the fact that the August 26, 2009 interview was not recorded and that the agents' notes do not detail the exact question asked. Nevertheless, "viewing the evidence in the

light most favorable to the prosecution," it finds that a "rational trier of fact could have found" the element of falsity beyond a reasonable doubt. *See Nevils*, 598 F.3d at 1164.

There was much testimony at trial from the agent who conducted the August 2009 interview regarding precisely what he asked. DHS Agent Ricardo Fuentes testified as follows:

- Q. And what questions did you ask?
  A. Based on that answer, I was actually thinking now at this point well, how did she fund this business. So I had asked him, I said, "Well, did you loan her or give her any money to start this business?"
  . . .
  Q. And what did you ask him?
  A. I asked him if he had actually funded or assisted with that business.
  Tr. 236:20-237:9 (Fuentes Direct).

- Q. And so you asked him exactly "what about funding the business" during that interview?
  A. I asked him if he had ever given money to his wife to fund this business, to start it up.
  Q. Your precise question was, "If you ever -- Mr. Lee, have you ever given Ms. Liu any money to start up the business?"
  A. To fund the business, yes.
  …
  Q. The same question over and over again, "Did you give" –
  A. Right.
  Q. – "your wife any money to fund the Crystal Massage Parlor?"
  A. Correct.  If he had provided any funds to her.
  Q. Is it, "Did you provide any funds to her," or "Did you give her any money to fund" --
  A. I think I probably asked it around three different ways.
  Q. What three different ways did you ask him?
  A. Probably, "Have you ever funded this" -- "have you ever provided money to fund this business," and then he denied doing that.  And then later on I would ask him something similar and he would deny it.
  Tr. 260:7-261:5 (Fuentes Cross).

- Q. You asked him that question, "Did you give your wife any money to fund the business."  He said no?
  A. He denied that.
  Tr. 261:17-19 (Fuentes Cross).

- Q. You asked -- you testified that you asked Mr. Lee several times throughout the interview about funding of the massage parlor; is that right?
  A. Correct.
  Q. And that question was, "Did you give your wife any money to fund her business"; correct?

4

>    A. Correct.
> Tr. 276:7-13 (Fuentes Recross).
>
> * Q. And to the best of your recollection, the precise terminology of that question was, "Did you give your wife any money to fund the business"?
>   A. "Did you assist her with funding," yes.
>   Q. "Did you assist her with funding" or "Did you give her any money to fund"?
>   A. "Give her any money."
>   Q. Which one is it?
>   A. "Give her any money."
>   Q. "Did you give her any money to fund the business"?
>   A. Right.
> Tr. 277:11-21 (Fuentes Recross).
>
> * Q. Now, without reading your notes, do you recall what specific thing the defendant said?
>   A. I asked him specifically if he had given money to fund this business, and he specifically said, "I have never funded this business."
> Tr. 278:11-15 (Fuentes Further Redirect).

DHS Agent John Henderson, who also participated in the August 2009 interview, testified that he did not recall what question Agent Fuentes asked defendant during the interview. Tr. 304:17-20; 306:19-307:16.

Although the testimony varies as to the exact wording of the question asked, it shares a common thread: the use of the word "fund" or "funding," which defendant attacks as ambiguous. Although this word may be susceptible to the interpretation that defendant put forward at closing argument—that it could be asking whether Mr. Lee funded his wife's business with money out of his own pocket rather than with a loan he obtained from a bank—a rational trier of fact could have found that the term "fund" included obtaining a loan. Moreover, upon further questioning from both defense counsel and government counsel, Agent Fuentes settled on the phrasing of his question as follows: "Did you give her any money to fund the business"? or ". . . specifically if he had given money to fund this business . . . ."[1] *See* Tr. 277:11-21; 278:11-15. In this scenario, the operative term is not "fund" but is rather "give." A rational trier of fact could have found the element of falsity by concluding that whether Mr. Lee *gave* money to his wife for her business

---

[1] This is also the phrasing the parties agreed to in the jury instructions: "The statement charged in Count One is that Mr. Lee stated: 'No' to the question whether he gave his wife any money to fund her business." *See* Docket No. 121 at 36.

included giving her money he borrowed from a bank.

Defendant cites to two Ninth Circuit cases that, though analogous, do not justify overturning the jury's verdict here. The first, *United States v. Sainz*, 772 F.2d 559 (9th Cir. 1985), involved a perjury conviction where the grand jury transcript clearly documented the exchange at issue. In that case, the question asked was a compound question containing an imprecise term, to which the defendant gave a literally true answer. *See* 772 F.3d at 563-64. The second case, *United States v. Jiang*, 476 F.3d 1026 (9th Cir. 2007), involved a bench trial for a charge involving false statements to the government under 18 U.S.C. § 1001(a). The appeals court overturned the conviction in part based on factors that are not present here: that the agent's notes "were recorded some time after the day of the interview" rather than contemporaneously, as here, *see* Tr. 242:11-18, 250:1-3, 283:9-11, 299:2-10; that the agent requested that Jiang bring documents to the interview regarding the specific topics at issue, unlike here, where the agents did not tell Mr. Lee the interview topic in advance, *see* Tr. 194:21-195:4; and that Jiang's English was "broken" and "poor."

Defendant argues that his case is also analogous because, when questioned directly in August 2013 about whether he obtained a loan for his wife, he was forthcoming, as were the defendants in *Sainz* and *Jiang*. However, those cases involved much shorter lapses in time between the challenged question and the follow-up question that elicited the truthful response. *See Jiang*, 476 F.3d at 1028-29 (follow-up question asked one week after original interview); *Sainz*, 772 F.2d at 561 (follow-up question asked during the same interview). Here, defendant gave his truthful answer four years after the alleged false statement, after his wife had revealed to agents that her husband had gotten a bank loan for her to purchase the massage parlor. Viewing the evidence here in the light most favorable to the prosecution, as it must, the Court cannot say that the evidence is insufficient as to the element of falsity in Count One.

The Court also disagrees with defendant that the evidence was insufficient to sustain a conviction on the elements of materiality and intent. A statement is material if it "is *capable* of influencing or affecting a federal agency," although the false statement "need not have actually influenced the agency." *United States v. Service Deli, Inc.*, 151 F.3d 938, 941 (9th Cir. 1998); *see*

*also United States v. De Rosa*, 783 F.2d 1401, 1408 (9th Cir. 1986) (statement is material if it "(1) could affect or influence the exercise of governmental functions; or (2) has a natural tendency to influence or is capable of influencing agency decision"). Even adopting the stated purposes for the investigation that defendant puts forth in his motion, a rational juror could have concluded that the false statement in Count One was material to DHS's actions. *See* Mot. at 16. Further, a rational juror could have concluded that defendant had the requisite intent[2] because, as the government notes, he had a law degree, he had worked as a federal employee since 2001, and at the beginning of the interview he signed a *Garrity* form warning him that "[a]nything you say may be used against you as evidence both in an administrative proceeding or any future criminal proceeding." *See* Oppo. at 8-9.

For these reasons, the Court DENIES defendant's motion for a judgment of acquittal as to Count One. Likewise, finding that the evidence does not "preponderate[]sufficiently heavily against the verdict," the Court DENIES defendant's motion for a new trial on Count One. *See Kellington*, 217 F.3d at 1097.

## II. Count Two

Defendant also moves for acquittal as to Count Two. The Court agrees with defendant that the evidence, even viewed in the light most favorable to the prosecution, is insufficient to sustain a conviction on Count Two because no rational trier of fact could find the essential element of materiality beyond a reasonable doubt.

At trial, the government introduced evidence that on March 19, 2009, defendant ran three queries of his wife's name in TECS, to which he had access as an Immigration Services officer. Tr. 378:2-379:10. Four and a half years later, on October 10, 2013, DHS Office of Inspector General Special Agent Lamont Scott interviewed defendant regarding his TECS usage, "to find out why he ran his wife in the TECS system . . . ." *See* Tr. 317:14-318:8; 386:10-387:4.

The jury found defendant guilty based on the following instruction:

---

[2] Defendant's motion here focuses on whether there was sufficient evidence that he "knew his conduct was unlawful." *See* Mot. at 15.

>Mr. Lee is charged in Count Two with knowingly and willfully making a false statement on or about October 10, 2013, in a matter within the jurisdiction of a governmental agency or department, the United States Department of Homeland Security, in violation of Section 1001 of Title 18 of the United States Code. In order for Mr. Lee to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
>First, Mr. Lee made a false statement in a matter within the jurisdiction of the Department of Homeland Security;
>
>Second, Mr. Lee acted willfully; that is, Mr. Lee acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and
>
>**Third, the statement was material to the activities or decisions of the Department of Homeland Security; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.**
>
>The statement charged in Count Two is that Mr. Lee stated: "No" to the question whether he ever made any unauthorized queries of his wife in TECS for personal use.

Docket No. 121 at 37 (emphasis added).

Defendant argues first that the statement in question could not have been material because "Agent Scott told the grand jury that the purpose [of his investigation] was to 'determine if Mr. Lee was associated with the brothel operating as a massage parlor'" and the massage parlor closed five years before the interview regarding the TECS search. Mot. at 17 (citing Tr. 424). The government counters that the March 2009 search date was "significant to [Special Agent Scott] because it raised the specter that Defendant had impermissibly run the queries to obtain restricted information about [his wife's] judicial proceedings or immigration status, or both." Oppo. at 15. But what the government fails to state, and what it failed to present at trial, was what activities or decisions of DHS were or could have been influenced by defendant's October 2013 denial.

The government's arguments that there was sufficient evidence as to materiality read rather like after-the-fact justifications. For instance, the government argues that defendant's August 2013 admission that he had obtained a bank loan for his wife "called Defendant's overall credibility into question" and so Special Agent Scott "then expanded his investigation to include Defendant's use of the TECS system . . . ." Oppo. at 14. That Special Agent Scott decided, years into the investigation of defendant, to explore the possibility of TECS misuse years before does not mean that a false statement regarding that misuse was material. Nor is there materiality in the

government's assertion that the TECS question "was certainly an important part of the investigation regarding [defendant's] connection with Crystal Massage Therapy" when the business had been closed for several years by the time of the October 2013 interview. *See id.* at 15.

It is also not persuasive that if defendant had been forthcoming in October 2013 this would have saved the agency "further investigative steps" into his TECS queries. Special Agent Scott testified that in February 2014 and April 2014 he requested further documentation about defendant's queries and TECS history from Customs and Border Protection. Tr. 327:10-14, 399:2-25, 406:6-17. Special Agent Scott's reasons for wanting these documents were broad,[3] but several of the documents (a copy of the TECS exam, defendant's training records) appear to be related to TECS training, and Special Agent Scott testified that he had an opportunity to question defendant about TECS training during the October 2013 interview. *See id.* 393:1-9, 399:12-16.

Critically, Special Agent Scott testified that he knew defendant was lying at the October 2013 interview. Prior to the October 2013 interview, Special Agent Scott obtained a print-out from TECS showing defendant's March 2009 queries of his wife's name. Tr. 395:25-396:11. Therefore, before defendant made the false statement, the agency had internal proof that defendant had run such a search, and Special Agent Scott testified that he confronted defendant with this information at the interview.[4] Tr. 395:25-396:17. Special Agent Scott further testified that "the answers that he was giving me in my opinion were not true" and that after Special Agent Scott confronted defendant with the document he "asked [defendant] a series of questions over again." Tr. 396:12-24. Where the agency knew that defendant's statement was false at the time it was

---

[3] Special Agent Scott testified that he wanted the information "[t]o gain more information into who Mr. Lee was and how he had authority, what his training was, all to basically let me know that he had -- he knew about TECS training, he knew about the rules and the regulations, he was a TECS user, to provide me more backup documentation." Tr. 399:17-22.

[4] Defendant states that the first time he learned of the allegation regarding the TECS print-out was upon hearing Special Agent Scott's testimony at trial. Mot. at 10. No mention of the TECS printout is made in the Scott's notes or report, or those of his assistant, Special Agent Lee, nor is a copy of it appended to any of those documents. These allegations form the basis of defendant's argument regarding discovery violations and his request for an evidentiary hearing.

1  made, the government's evidence does not suffice to show materiality.

2  Accordingly, the Court GRANTS defendant's motion for judgment of acquittal on Count Two. Where a court "enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1). For the same reasons stated above that the Court finds a judgment of acquittal should be granted, and because the evidence regarding the element of materiality in Count Two "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," the Court conditionally finds that a new trial should be granted if this judgment of acquittal is later vacated or reversed. *See Kellington*, 217 F.3d at 1097. Should that occur, the Court further finds that an evidentiary hearing in advance of the new trial is necessary for the reasons stated in defendant's motion. *See* Mot. at 26-27.

### III. Other Matters

Having granted defendant's motion for acquittal on Count Two, the Court need not rule on defendant's allegations regarding potential discovery and Jencks Act violations, defendant's concerns with the government's closing argument,[5] and defendant's request for an evidentiary hearing.[6] The Court is not persuaded by defendant's argument that "the government's case was weak at best," *see* Mot. at 19, as the Court is granting defendant's motion for a judgment of acquittal as to the weakest part of the government's case—materiality under Count Two. This leaves defendant's arguments that the Court erred in failing to give his proposed instruction on falsity and that the trial was improperly prejudiced by references to prostitution.

The Court does not find that it was error to fail to give defendant's proposed instruction on

---

[5] These concerns pertain primarily to the timing of defendant's TECS query.

[6] This request is largely made to gather evidence in support of the defense's attack on Count Two.

10

falsity.[7]  First, the Court does not find that the agent's question in this case was ambiguous to the same extent as the questions in *Jiang* and *Sainz*, which defendant cites in support.  Second, the Court heard extensive argument on this point from both sides prior to the close of trial.  *See* Tr. 563:17-568:11.  The Court permitted defense counsel to make the argument contained in the proposed instruction during closing, and defense counsel did so.  *See* Tr. 568:6-11, 622:1-5 ("If you all can decide on the exact question that Agent Fuentes asked, that question still has to be clear.  If that question is ambiguous and there is a reasonable response to that ambiguous question, it is not a false statement.  That is not a knowing and deliberate false statement.")  The jury heard this argument and still convicted defendant on Count One.

        The Court also finds that references to prostitution did not unfairly prejudice the jury, as defendant argues.  The Court discussed this with the parties during the pretrial conference and again during the first day of trial.  *See* Docket No. 105 at 2; Tr. 5:1-13:20.  The Court limited the government to one witness on the topic of the alleged prostitution activities and ordered "that the testimony shall be for the purpose of showing how the massage parlor's allegedly illegal activities triggered DHS's investigation and how defendant's statements were material to that investigation."  Docket No. 105 at 2.  The Court does not agree with defendant that the government exceeded those bounds at trial.

        Defendant mainly takes issue with two pieces of testimony: (1) that government witness Leslie Severe testified that "undercover agents 'were solicited for some type of sexual activity'" at the massage parlor, and (2) that "Agent Fuentes testified that he read a portion of the police report to Mr. Lee during the August 2009 interview stating that Ms. Liu solicited sex from an undercover agent . . . ."  *See* Mot. at 21-22.  As to Ms. Severe's testimony, the government asked Ms. Severe on direct examination to respond "based on your personal observations."  Tr. 157:18-22.  When Ms. Severe stepped beyond those boundaries, defense counsel made a hearsay objection that the Court sustained.  Tr. 157:23-158:6.  Nor does the Court find that it was impermissible hearsay for

---

[7] Defendant sought the following instruction: "If you find that a particular question asked of Mr. Lee was ambiguous and that Mr. Lee truthfully answered one reasonable interpretation of the question under the circumstances presented, then his answer would not be false.  It is the burden of the government agents to clarify any ambiguous statements."  Docket No. 119 at 2.

Ms. Severe to testify as to the direction she gave her officers regarding when to use a "bust signal." *See* Tr. 160:23-162:2. As to Agent Fuentes's testimony that he read a police report regarding defendant's wife's alleged solicitations, the Court gave a limiting instruction to the jury. Tr. 198:24-199:22. The references to defendant's wife's actions constituted only a brief portion of Agent Fuentes's lengthy testimony, and was drawn out to show the effect on the listener as well as to explain why Agent Fuentes still remembered the interview conducted nearly seven years earlier. *See* Tr. 199:24-200:17. Overall, these limited references to sexual activity at the massage parlor did not "impermissibly taint[] the verdict," as defendant argues. *See* Mot. at v.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for judgment of acquittal or a new trial on Count One. The Court GRANTS defendant's motion for judgment of acquittal on Count Two.

**IT IS SO ORDERED**.

Dated: September 20, 2016

_____
SUSAN ILLSTON
United States District Judge